# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

MONTE A. MAGEE, )
)
        Plaintiff, )
)
v. ) Case No. CIV-09-304-RAW
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
        Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Monte A. Magee (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on March 31, 1953 and was 54 years old at the time of the ALJ's decision. Claimant completed his education through the ninth or tenth grade. Claimant has worked in the past as a house repairer. Claimant alleges an inability to work

3

beginning September 15, 1994 due to limitations resulting from COPD, recurrent pneumonia, hepatitis C, hepatomegaly, lumbar degenerative disk disease with multiple herniated disks and radiculopathy, cervical degenerative disk disease, advanced atherosclerotic disease of the carotid arteries, anxiety, and depression with possible psychotic features.

**Procedural History**

On February 25, 2005, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On March 6, 2007, an administrative hearing was held before ALJ Edward L. Thompson in Ardmore, Oklahoma. On June 8, 2007, the ALJ issued an unfavorable decision on Claimant's application. On June 8, 2009, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he acquired work skills from his past relevant work that are transferrable to other occupations, did not meet a listing

and could perform a limited range of work at all exertional levels.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in: (1) failing to discuss uncontroverted and/or significantly probative evidence which conflicted with his findings; (2) making findings at step two which were legally insufficient and not supported by substantial evidence; and (3) failing to make a legally sufficient residual functional capacity ("RFC") determination which is supported by substantial evidence.

**Consideration of Probative Evidence**

Claimant asserts the ALJ failed to discuss probative evidence contained in the medical records. In his decision, the ALJ concluded Claimant suffered from the severe impairments of depression and a history of alcohol abuse. (Tr. 17). He rejected Claimant's assertions of impairments for hepatitis C, contending he demonstrated normal liver function, as well as back problems and asthma. (Tr. 18). The ALJ's discussion of the medical evidence on these latter two claimed impairments is, in essence, non-existent and without explanation.

The medical record demonstrates with regard to Claimant's back condition that on February 29, 1997, Claimant was attended by Dr. P. Klaassen, complaining of back pain. Dr. Klaassen diagnosed

5

Claimant with degenerative disk disease of the lumbar spine as well as carpal tunnel syndrome or peripheral neuropathy. (Tr. 319). Dr. Klaassen restricted Claimant from working due to back pain. Id.

On June 19 and August 5, 1997, Claimant continued experiencing back pain radiating to the left leg. (Tr. 322). On August 22, 1997, Claimant underwent an MRI of the lumbar spine area. At L2-3, the testing revealed disc desiccation with a right paracentral right lateral disk bulge which narrows the AP diameter of the spinal canal by approximately 20%. The disk bulge effaces the thecal sac and mildly displaces the nerve roots.

At L3-4, a broad based annular disk bulge was found with mile neuroforaminal narrowing bilaterally. At L4-5, the MRI showed a broad based annular disk bulge with slightly increased bilateral neuroforaminal narrowing. Mild facet degenerative changes were seen at that level. At L5-S1, a broad based annular disk bulge with a more focal central disk protrusion was seen with bilateral narrowing of the neuroforamina, right greater than left. (Tr. 187-88).

On September 12, 1997, Claimant saw Dr. Klaassen, still complaining of back pain. Dr. Klaassen noted the results of the MRI, prescribed Claimant pain medication, and referred him to a

neurosurgeon. (Tr. 321). On October 20, 1997, Claimant continued to report progressive back and left leg radicular pain. Claimant exhibited difficulty walking on his heels, demonstrated decreased stocking glove sensation in his left leg with positive straight leg raise testing on the left at 80 degrees and on the right at 90 degrees. Claimant was diagnosed with back and leg radicular pain with possible peripheral neuropathy and carpal tunnel syndrome. He was prescribed anti-inflammatory medication, muscle relaxants, physical therapy, and the recommendation for wrist splints. (Tr. 185). Dr. Klaassen noted improvement in an October 23, 1997 visit. (Tr. 320).

On September 15, 1998, Claimant saw Dr. Klaassen who noted his continued back pain, among many other problems, such that he cannot work. (Tr. 317). On October 15, 1998, Claimant reported that his back pain radiated down his left leg, with a stinging sensation in his left foot. (Tr. 316). On May 7, 1999, Dr. Klaassen noted Claimant continued with back and left leg pain with positive straight leg raise. Claimant was referred for trigger point pain injections, which was performed on June 2, 1999. (Tr. 315, 174-75).

On June 7, 1999, Claimant's pain returned with positive left straight leg raise testing. (Tr. 314-15). Claimant obtained

further trigger point injections on August 2, 1999. (Tr. 172-73). Degenerative changes in his cervical spine were noted on May 2, 2003. (Tr. 288).

On August 15, 2005, Claimant went to the emergency room with back pain which affected his ability to sleep. (Tr. 251). Claimant was diagnosed with acute lumbar strain and chronic back pain. (Tr. 253). Claimant was noted to have to stand during the Social Security interview and walked with a limp. (Tr. 121).

The ALJ relied exclusively upon the consultative examination by Dr. Robin Hall to discount Claimant's complaints of back impairments. (Tr. 18). Dr. Hall concluded Claimant had a full range of motion of his back and all joints with normal neurological findings, good strength overall, normal gait and normal manipulative abilities. (Tr. 221).

The ALJ similarly failed to discuss virtually all of the medical records which would indicate Claimant suffered from respiratory problems, including COPD, and liver disease in connection with hepatitis C. Moreover, the ALJ's finding in stating "claimant is found to have some mental limitations, probably partially related to his long history of alcohol abuse" finds little evidentiary support but rather represents an improper assertion of medical opinion on the part of the ALJ. Lax v.

Astrue, 489 F.3d 1080, 1089 (10th Cir. 2007).

The record on review must demonstrate that the ALJ considered all of the evidence. The ALJ is not, however, required to discuss every piece of evidence. But it is clear that, "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996)(citations omitted). The ALJ's decision in this case does not demonstrate the ALJ considered the totality of the significant and probative medical record on the conditions discussed, requiring reversal.

**Step Two Analysis and RFC Findings**

Since this Court has determined the ALJ failed to properly consider the medical record on Claimant's conditions and possible impairments, the step two analysis and RFC findings should be re-examined on remand as well.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED**

9

for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 24th day of August, 2010.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE